## 15085

### HYMAN v. CAROLINA VENEER & LUMBER CO.

(9 S. E. (2d), 27)

*F. Mildred Huggins,* for appellant,

*Messrs. McEachin & Townsend,* for respondent,

May 13, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiff brought this suit against Carolina Veneer and Lumber Company for the recovery of damages on account of injuries alleged to have been suffered by him while in its employ. He appeals from an order directing a verdict in favor of the defendant. The trial Court held that there was

no evidence from which a reasonable inference could be drawn, tending to show that the plaintiff at the time he received his alleged injuries was an employee of the defendant. The defense sought to show that the plaintiff was at all times employed by Tyler Bros., Inc., a corporation engaged in logging operations.

A résumé of the facts shows that Carolina Veneer and Lumber Company, which we shall refer to as the veneer company, was incorporated in 1925. Its charter gave it the right and privilege to engage in the manufacture of lumber products, purchasing, owning, and selling lumber and logs, and the doing of all things necessary and incident to the general manufacture and sale of veneer and lumber products. W. D. Tyler was its president and manager from the date of its incorporation, and his brother, Lucius Tyler, was its secretary and treasurer.

This corporation operated a sawmill and manufacturing plant in the County of Florence. These two brothers were the sole stockholders, directors, and office holders.

In 1935, W. D. Tyler and Lucius Tyler secured a charter for Tyler Bros., Inc. Under its charter this corporation was granted the same rights and privileges as were given to Carolina Veneer and Lumber Company, and was authorized to engage in the same business. Lucius Tyler was made president, W. D. Tyler filled the offices of secretary and treasurer, and the two brothers constituted the sole stockholders and directors of this corporation. The business of both corporations is conducted from the same office at the sawmill plant of the defendant.

According to the testimony for the defense, the veneer company is engaged only in the manufacture of veneer and other lumber products, and buys its logs, delivered at its plant, from Tyler Bros., Inc., a separate corporate entity organized solely to carry on logging operations.

The plaintiff was employed by W. D. Tyler, who, according to the undisputed testimony, is not only the president of

the veneer company, but its active manager. Plaintiff says that Mr. Tyler directed him to report for work to a foreman who was engaged in cutting and loading logs from a tract of land situate about one mile from defendant's sawmill. He testified that his duties were to assist in getting logs out of the swamp, sawing them, loading them on the truck, and delivering them by truck to the plant of the defendant. The plaintiff was employed in August, 1936, and received his alleged injuries while in such employment, on or about February 17, 1937. And, according to his testimony, such injuries were suffered at a time when he was working under the supervision of the woods foreman, Wilson Rivers, to whom he had been directed by Mr. W. D. Tyler. He also testified that he was paid in person by W. D. Tyler at the office of the defendant.

The testimony for the defense shows that in the employment of labor whether for the manufacturing plant or the logging corporation, an employee was never told which company, he was employed to work for. This could be ascertained, it is said, only from the nature of the work he did, his status on the payroll, and his social security card.

Wilson Rivers, the foreman of the logging operations, kept the time books for all men working in the woods, and delivered the books on Thursday of each week to the office jointly occupied by the corporations, so that the weekly wage could be computed. These time books carried no discriminatory marks of identification to indicate the name of the corporation for which they were kept, nor did they contain any data except the time of the laborers referred to therein. On Friday of each week the employees of Tyler Bros., Inc., working under Mr. Rivers, were paid off in cash, which was brought to his house by the bookkeeper—a bookkeeper employed by the two corporations. And he says that the plaintiff, as an employee of the logging corporation, was paid at his house along with the other laborers. According to his testimony and the testimony of Lucius Tyler, none of the

employees of Tyler Bros., Inc., were ever paid at the common office of the corporations at the sawmill plant. The plaintiff, however, testified that he was never paid at the home of Wilson Rivers. That on the contrary he was invariably paid by W. D. Tyler, the president and manager of the veneer company, at the office of the veneer company.

The testimony tends to show that Wilson Rivers was not only superintendent of Tyler Bros., Inc., in its logging operations, but that he was its paymaster, and in effect had an office for this purpose at his home. Mr. Lucius Tyler, the president of the logging corporation, testified that only employees of that company received their pay at the home of Rivers. The testimony of the plaintiff that he was not paid there at any time, but that he was paid by W. D. Tyler, the president of the veneer corporation, at that company's office, raises a reasonable inference that he was an employee of the defendant. It is true that about eight months after he was employed, and ten days before he received his injuries, he was given a Federal social security card which carried the statement that he was an employee of Tyler Bros., Inc., but this is not conclusive that he was so employed. It was for the jury to say what inference should be drawn from this evidence when considered along with all of the other testimony in the case.

The Circuit Court held that the evidence of the plaintiff that he was employed by W. D. Tyler, and paid at an office used by both corporations, had no significance as tending to prove that he was employed by the defendant, inasmuch as Mr. Tyler was an officer of each corporation, and that it could plausibly be argued that he was acting just as much for the one as the other. But as we view the evidence, it was an issue for the jury to determine, under all of the circumstances, which corporation W. D. Tyler was acting for when he employed the plaintiff and undertook to direct his work. This is especially true when it is borne in mind that the two brothers, W. D. Tyler and Lucius Tyler,

acted for both corporations, and when employing a laborer never notified him which corporation he was employed to work for. Indeed, it may be inferred from the evidence of several employees that they did not know for whom they worked—whether for the logging corporation, for the Tyler brothers as a partnership, or for the Tylers as individuals.

It is the well-established rule in this State that where a motion is made for a directed verdict, the testimony and all reasonable inferences deducible therefrom are to be considered in a light most favorable to the party against whom the motion is made. It is not the province of the Court to weigh the testimony, but simply to determine if there is any relevant, competent testimony adduced from which a reasonable inference may be drawn, tending to establish the material elements in the plaintiff's cause of action.

It is not necessary for us to consider or determine on this appeal whether Tyler Bros., Inc., the logging corporation, was a mere instrumentality or agency of the defendant, but we do hold that the evidence made an issue for the jury to determine whether the plaintiff was an employee of the defendant at the time he received his injuries.

Following the trial of this cause, the plaintiff made a motion before the trial Judge for an order giving him the privilege of examining the books and records of the defendant, Carolina Veneer & Lumber Company, and of Tyler Bros., Inc. No notice of this motion was served upon the latter corporation. The motion was refused by the trial Judge largely upon the ground that it came too late, and upon the further ground that the notice failed to disclose why the plaintiff sought this discovery after the conclusion of the case. It now appears that the plaintiff wished to use the books and records of these two corporations as after-discovered evidence, upon which to base a motion for a new trial. Rule 44 of the Circuit Court requires that the applicant "show to the satisfaction of the Court or Judge the materi-

ality and the necessity of the discovery sought and the particular information which he requires."

We sustain the action of the Court in refusing the order, but without prejudice to the plaintiff to renew such motion as he may be advised.

Judgment reversed, and case remanded for a new trial.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE BAKER and MESSRS. ACTING ASSOCIATE JUSTICES E. C. DENNIS and WM. H. GRIMBALL concur.